UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | |
| ) | Bankruptcy Case |
| ALICE LEONA BARNES, ) | No. 12-65084-tmr7 |
| ) | |
| ) | MEMORANDUM OPINION |
| Debtor. ) | |

This matter came before the court on the application of Trustee, Joseph Charter, to employ Marjorie Huff and her firm as special counsel for the Estate. Debtor has objected to the employment. After hearing on May 28, 2013, the matter was submitted on the record, which was augmented by Ms Hauf's supplemental declaration filed June 12, 2013.

**Background**:

In May 2006, Debtor Alice Barnes's son was involved in a motor vehicle accident in Las Vegas in a car titled to Debtor. Nancy White (nka Miller) was injured and brought suit for damages in Nevada (**First Nevada Action**). In that Action Ms White was represented by Marjorie Hauf and her firm Hauf and Ganz. Debtor was represented by the Watson Rounds firm. Evidently Debtor was a named insured on a policy issued by Nationwide Mutual Insurance Co. (**Nationwide**). In July 2009, Ms White obtained an approximate $60,000 judgment against Debtor. She later obtained an amended judgment which added approximately $13,700 in costs, for a total judgment amount of approximately $73,700 (**the judgment**).

MEMORANDUM OPINION-1

Debtor filed her Chapter 7 petition on November 30, 2012. Mr. Charter was appointed Trustee. Debtor listed only two debts on her schedules. One was to Rogue Federal Credit Union for $1,500, secured by a Chevy Tracker valued at $4,000. The other was to Ms White (noted as "Miller"), listed as general unsecured for $73,856 based on the judgment. On Schedule B, Debtor listed a potential claim against an insurance company and attorney concerning the First Nevada Action. The claim was given an "unknown" value.

On December 28, Debtor's section 341(a) meeting of creditors was held. On January 24, shortly after the Trustee filed an amended inventory indicating possible assets to administer, notice to creditors went out setting an April 23, 2013, bar date to file claims. As of today, no proofs of claims have been filed.

On February 15, 2013, the Trustee applied to employ Ms Hauf and her firm on a contingent fee basis to investigate and pursue a "bad faith" cause of action against Debtor's insurer, and malpractice claims against Debtor's former counsel, all deriving from the First Nevada Action.[1] The application was filed on LBF 753.95. As part of the form, Ms Hauf signed a verified statement (**First Declaration**) that she had read 11 U.S.C. §§ 101(14) and 327 and FRBP 2014(a), and that her firm had "no connections with . . . the debtor(s) [and] creditors" except that she "represented Nancy Yvonne Miller [White] in obtaining [the] underlying judgement against debtor." No other disclosures were made. Debtor objected to the application arguing Ms Hauf was not "disinterested."

On February 28, Debtor received her discharge.

On March 4, Ms Hauf apparently filed, on behalf of the Estate, a complaint in District Court for Clark County, Nevada, against Watson Rounds, Nationwide and various other parties, including Allied Insurance (**Second Nevada Action**). The complaint alleged multiple claims against Nationwide, many based on failure to protect Debtor's interest as its insured in the First Nevada Action. It also alleged claims for legal

---

[1] Under the proposed agreement, Ms Hauf would receive 40% of amounts recovered more than 90 days before the first setting for trial, and 45% of amounts recovered by settlement, judgment or award within 90 days of the first setting for trial or thereafter. Any costs advanced would be recovered after payment of attorney's fees.

MEMORANDUM OPINION-2

malpractice against Watson Rounds. It sought compensatory or expectation damages for denied policy benefits, consequential damages, including emotional distress and attorney's fees in excess of $10,000, punitive damages in excess of $10,000, and costs. The complaint's allegations suggest the outstanding balance owed on the judgment at the time of the Chapter 7 petition was approximately $13,000.[2]

On March 18, the Trustee responded in support of the application arguing Ms Hauf met the Bankruptcy Code's disinterestedness requirements. He argued Ms Hauf was well-suited to work for the Estate based on her former involvement in the First Nevada Action. The Response attached a copy of the complaint filed in the Second Nevada Action.

On March 20, a hearing on the application was held. By Minute Order entered March 21, Ms Hauf was ordered to file a declaration by April 3, 2013, clarifying her representation of Ms White including any representation in the bankruptcy case. She was also ordered to disclose her fee arrangement with Ms White and whether she claimed an attorney's lien on the proceeds of the judgment. Response and reply deadlines were set.

On March 25, Ms Hauf filed her declaration (**Second Declaration**) wherein she stated that she previously represented Ms White in the First Nevada Action, that the Trustee had retained her to prosecute the Second Nevada Action, and that any proceeds derived therefrom would be estate assets. She further stated that the interests of "my prior client, Nancy White, and my current client, the Estate, are aligned," that she did not believe representing the Estate violated any of the Nevada Rules of Professional Conduct, and that the Trustee would be the final decision maker in the Second Nevada Action. The Second Declaration made no mention as to Ms Hauf's fee arrangement with Ms White or whether she claimed an attorney's lien on the proceeds of the judgment. Later that day, Ms Hauf filed an amended declaration (**Third Declaration**) repeating the statements made in the Second Declaration and adding that her fee agreement with Ms White in the First Nevada Action was on contingency, that she had not perfected an attorney's lien on the judgment, and that the First Nevada Action was now closed.

---

[2] The $13,000 may not include the amounts of potentially avoidable preferential garnishments or funds held in Ms Hauf's attorney trust account.

MEMORANDUM OPINION-3

Debtor responded to the Third Declaration. Among other things, she raised concerns as to whether Ms Hauf's representation of Ms White had indeed terminated. She alleged Ms Hauf represented Ms White at the § 341(a) meeting of creditors. She also argued Ms Hauf had failed to comply with the Minute Order by failing to disclose her current fee agreement with Ms White.

The court then set a hearing on the application for May 28. The hearing notice advised that "[m]atters to be discussed are the proposed attorney's failure to address issues raised in the 3/21/13 minute order . . . ."

The Trustee responded to Debtor's continuing objections, advising that Ms Hauf appeared at the § 341(a) meeting at his invitation as she had earlier alerted him that a potential asset existed in the form of the claims asserted in the Second Nevada Action. He further advised Ms Hauf was not licensed to practice law in Oregon and, thus, could not have represented Ms White at the § 341(a) meeting.

At the May 28 hearing, the Trustee confirmed that the judgment had indeed been substantially satisfied and that if the Second Nevada Action was successful, it was quite possible this would be a surplus asset case. As to the pending application, Debtor raised her continuing disclosure and disinterestedness concerns, and I again raised concerns that the Second and Third Declarations had not adequately addressed the Minute Order's directives. In particular I needed to know whether Ms Hauf's representation of Ms White continued, and the scope of that representation. I further needed more information as to the contingency fee agreement with Ms White and whether that agreement would apply to any distribution from the Chapter 7 Estate. Ms Hauf was orally ordered to file a more detailed declaration within 21 days.

On June 12, Ms Hauf filed a supplemental declaration (**Fourth Declaration**). In it she declared that "[m]y firm continues an attorney-client relationship with Ms White as we continue to maintain her settlement funds in our trust account and update her on the status of the collection of her judgment." She further stated she was not licensed in Oregon and had not represented or provided legal advice to any of the participants in the Chapter 7 case other than her communications with the Trustee as to Debtor's possible claims against her insurer and former attorneys. She acknowledged that because the judgment had not been satisfied there were fees outstanding under her contingency fee agreement, and that "[c]urrently, Ms White's funds are in my

MEMORANDUM OPINION-4

trust account and my fees will disburse with those funds." She advised that Nevada law gave her an automatic attorney's lien for her fees but that such lien was only perfected upon written notice to the client and she has not provided Ms White such notice. She further stated that in her opinion the Nevada Rules of Professional Conduct did not prohibit her from representing the Estate. Finally, she advised she had obtained the Trustee's written informed consent to represent the Estate, but had not obtained similar written informed consent from Ms White.

**Discussion**:

Ms Hauf's employment will be denied for two reasons. First, she has an actual, or at least a potential, conflict of interest. Alternatively, she has failed to meet the disclosure requirements of the Bankruptcy Rules.

**Conflict**:

Under § 327(a), a trustee may employ a professional, including an attorney, who does not hold or represent an <u>interest adverse to the estate</u>, and who is a disinterested person. (emphasis added). A "disinterested person" is someone who among other things is not a creditor and who "does not have an <u>interest materially adverse to the interest of the estate</u> . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or <u>for any other reason</u>." §§ 101(14)(A), (C). (emphasis added). The "for any other reason" basis has been referred to as the "catch-all," <u>Dye v. Brown (In re AFI Holding, Inc.)</u>, 355 B.R. 139, 149 (9th Cir. BAP 2006), <u>aff'd and adopted by</u>, 530 F.3d 832, 838 (9th Cir. 2008), and requires a totality of the circumstances, fact driven inquiry. <u>Id.</u> at 151-152.

Neither the Bankruptcy Code nor Rules define the term "adverse interest." In discussing the term the Ninth Circuit has stated:

> A generally accepted definition of "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.

<u>Dye</u>, at 148-149.

MEMORANDUM OPINION-5

In a Chapter 7 case, "a person is not disqualified from employment solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest." § 327(c).  Where the trustee seeks to employ special counsel to work on a specific matter, as here, the conflict inquiry is directed towards the specific services to be performed.  Stoumbos v. Klimnik, 988 F.2d 949, 964 (9th Cir. 1993); Fondiller v. Robinson (In re Fondiller), 15 B.R. 890, 892 (9th Cir. BAP 1981).

In applying § 327(c), Debtor, rather than a creditor or the United States trustee, has objected, as required by the statute.  However, there is authority that I may sua sponte consider actual conflict issues stemming from dual representation.  In re Am. Energy Trading Co., 291 B.R. 154, 157-158 (Bankr. W.D. Mo. 2003);  In re Penney, 334 B.R. 517, 520 (Bankr. D. Mass. 2005);  In re BH & P, Inc., 103 B.R. 556, 565 (Bankr. D. N.J. 1989), aff'd in part, rev'd in part and remanded on other grounds, 949 F.2d 1300 (3d Cir. 1991)).  Under the unique circumstances of this case, where there is in essence only one unsecured creditor, and the conflict involves that creditor, I find it appropriate to follow the above line of cases and thus will consider sua sponte (i.e. independent of Debtor's objections) whether Ms Hauf has an actual conflict.

In determining whether a conflict exists, "[s]tate rules of professional responsibility apply, as long as they do not conflict with the Bankruptcy Code and/or the Bankruptcy Rules."  Song v. Ehrenberg (In re Song), 2008 WL 6058782, *11 (9th Cir. BAP 2008).  Here, because Ms Hauf will not be practicing before the Bankruptcy Court, but instead will be prosecuting the Second Nevada Action in Nevada state court, I turn for additional guidance to Nev. Rule of Prof. Conduct 1.7 which provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:
>
> > (1) The representation of one client will be directly adverse to another client; or
> >
> > (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

MEMORANDUM OPINION-6

>    (b) Notwithstanding the existence of a concurrent conflict of interest under
>    paragraph (a), a lawyer may represent a client if:
>
>    (1) The lawyer reasonably believes that the lawyer will be able
>    to provide competent and diligent representation to each
>    affected client;
>
>    (2) The representation is not prohibited by law;
>
>    (3) The representation does not involve the assertion of a claim
>    by one client against another client represented by the lawyer in
>    the same litigation or other proceeding before a tribunal; and
>
>    (4) Each affected client gives informed consent, confirmed in
>    writing.

Ms White is the only unsecured creditor,[3] who Ms Hauf still represents in some capacity. Only a relatively small sum remains to be paid on the judgment. According to the Trustee, there is a distinct possibility that proceeds from the Second Nevada Action will be sufficient to put this case in surplus status. Additionally, Ms Hauf expects to be paid fees on a percentage basis from recoveries for the Estate and then also collect fees on a percentage basis from amounts paid to Ms White. Given those facts, Ms White's and the Estate's interests do not align, and Ms Hauf has an actual conflict. As the Trustee's counsel, she would be tasked with helping the Estate maximize its recovery for the benefit of all potential distributees, <u>including the Debtor</u>. <u>Song</u>, 2008 WL 6058782, at *9. On the other hand, her duty to Ms White runs simply to seeing the balance of the judgment satisfied. She also has a personal interest in recovering fees for her firm. These competing interests would be extant at all stages of the Second Nevada Action, including settlement discussions or trial. <u>See</u> <u>Duval Ranching Co. v. Glickman</u>, 930 F. Supp. 469, 473 (D. Nev. 1996) (impermissible conflict may arise if there may be substantially different possibilities for settlement or litigation strategy, citing ABA Model Rule 1.7 Official Comment). As such, there is a "significant risk" that Ms Hauf's representation of the Estate "will be materially limited" by her responsibilities to Ms White. Nev. R. Prof. Conduct 1.7(a)(2). Stated another way, because "it is plausible that the representation of . . . [Ms

---

[3] For purposes of my analysis, I will assume that at some point Ms White will file a proof of claim. Although it will be tardy, as the claims deadline has passed, it will nevertheless be entitled to distribution ahead of any surplus to the Debtor. § 726(a)(3), (6).

MEMORANDUM OPINION-7

White] may cause . . . [Ms Hauf] to act . . . differently than . . . [she] would without that . . . representation, then . . . [she has] a conflict and an interest adverse to the estate." <u>Gosser v. Arkison (In re Hammer)</u>, 2007 WL 7540944, *6 (9th Cir. BAP 2007) (quoting <u>In re Leslie Fay Co's., Inc.</u>, 175 B.R. 522, 533 (Bankr. S. D. N. Y. 1994).[4]

What if Ms Hauf's conflict is only "potential" (i.e. presently dormant) instead of "actual"? Some courts have read §§ 327(a) and (c) as being complementary so as to allow inquiry into potential conflicts under § 327(a) in cases of dual representation, with the court having discretion to deny the application on that basis. <u>See, e.g.</u>, <u>In re Marvel Entm't Group, Inc.</u>, 140 F.3d 463, 476-477 (3d Cir. 1998). Others have held § 327(c) is in essence an exception to § 327(a) and thus inquiry is limited to actual conflicts in cases of dual representation. <u>See, e.g.</u>, <u>In re Sarao</u>, 444 B.R. 496, 497-498 (Bankr. D. Mass. 2011). There does not appear to be controlling authority on this issue. However, <u>Marvel Entertainment</u> was cited with approval in the trustee qualification context by the Bankruptcy Appellate Panel in <u>Dye</u>, 355 B.R. at 154, <u>adopted in toto</u>, 530 F.3d 832, 838 (9th Cir. 2008), and in the present dual representation context in <u>Gosser</u>, 2007 WL 7540944 at *5. As such, it appears I may apply § 327(a) and exercise my discretion even if the conflict has not risen to "actual" status. For the reasons stated above, at least a potential conflict exists, and that is sufficient to deny the employment requested here.

**Disclosure**:

FRBP 2014(a) imposes disclosure requirements in large part to determine whether a professional meets the "no adverse interest" and "disinterestedness" requirements. <u>Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)</u>, 63 F.3d 877, 881 (9th Cir. 1995). The Rule requires that an application to employ a professional state, amongst other things "all of . . . [the proposed professional's]

---

[4] I have not overlooked that Rule 1.7(b)(4) allows the attorney in certain circumstances to engage in concurrent representation despite a conflict if she obtains written conflict waivers upon informed consent. However, the Rule also provides that such representation is only permitted if "not prohibited by law." Nev. Rule of Prof. Conduct 1.7(b)(3). In that regard, there is authority that such waivers are impermissible in the context of employment under § 327. <u>U.S. Trustee v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.)</u>, 211 B.R. 699, 703 (9th Cir. BAP 1997). Even were waiver possible, per the Fourth Declaration, Ms Hauf has only obtained the Trustee's waiver, not Ms White's.

MEMORANDUM OPINION-8

connections with the debtor, creditors, [and] any other party in interest . . . ." The Rule then requires the professional to submit an accompanying verified statement of any such connections.

> Full disclosure is an essential prerequisite for both employment and compensation. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 881 (9th Cir. 1995). A professional has a duty to make full, candid and complete disclosure of all facts concerning his transactions with the debtor, and must disclose all connections with the debtor, creditors, and parties in interest, no matter how irrelevant or trivial those connections may seem. *Mehdipour v. Marcus & Millichap (In re Mehdipour),* 202 B.R. 474, 480 (9th Cir. BAP 1996).

Shat v. Kistler (In re Shat), 2009 WL 7809004, *6 (9th Cir. BAP 2009). Rule 2014's disclosure requirements are applied strictly. Neben & Starrett, 63 F.3d at 881-882. Even negligent or inadvertent failures may result in adverse consequences. Id. at 882. Upon failure to comply with disclosure requirements, employment may be denied or revoked, or other sanctions imposed "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." Id. at 880.

Here, despite repeated encouragement by the court, Ms Hauf's disclosures did not meet the above-criteria.[5] The First Declaration was wholly inadequate. It was couched in the past tense and failed to disclose that Ms Hauf's representation of Ms White is continuing. It also failed to disclose what percentage contingent fee she was charging Ms White, what fees were still owed (which, because they were a percentage of the recovery, would by necessity have required disclosure of the amount still owed on the judgment), and whether or not the attorney's lien given by Nevada state law would or could be pursued or perfected.[6] In response to the Minute Order detailing what was required as follow-up, the Second and Third

---

[5] While Debtor may not have had standing to raise actual conflict issues under § 327(c), she did have standing to raise disclosure issues in that she had a pecuniary interest in who prosecuted the Second Nevada Action as, per the Trustee's admission, there was a likelihood of a surplus estate. See In re Trepanier, 2010 WL 3881488, *2 (Bankr. N.D. Ill. 2010) (chapter 7 debtor has standing to object to claims if there is a reasonable probability of surplus); c.f., Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.) 177 F.3d 774, 778, n.2 (9th Cir. 1999) (chapter 7 debtor has appellate standing if there is likely to be a surplus).

[6] See N.R.S. § 18.015.

MEMORANDUM OPINION-9

Declarations continued the inadequacies. Finally, in response to a further court order, the Fourth Declaration filled in some of the disclosure holes, yet still left questions unanswered, such as the percentage contingent fee, the amount of fees outstanding, whether the attorney's lien would be pursued, and whether Ms Hauf considered a distribution to Ms White from the estate part of the proceeds/recovery upon which her contingent fee and/or lien would attach. These inquiries are all germane to the conflict/adverse interest analysis, as well as whether the proposed contingent fee, <u>see</u> n.1 <u>supra</u>, was reasonable.

As a rule, bankruptcy courts should not have to pry information from a prospective professional, as has been the case at bar. Initial disclosures should be as complete as possible. Follow-up disclosures should address in detail any prior inadequacies and, if applicable, the court's stated concerns. Ms Hauf has failed on these fronts, and, as such, the Trustee's application to employ will be denied on the alternative independent ground of inadequate disclosure.

The above constitute my findings of fact and conclusions of law under FRBP 7052. An appropriate order will be entered consistent therewith.

*[signature: Thomas M Renn]*

THOMAS M. RENN
Bankruptcy Judge